UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN DAVID O'NEAL,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BONNIE LEE,<br><br>　　　　Defendant. | No. 2:14-cv-1598 GEB DB P<br><br><br>ORDER AND FINDINGS AND<br>RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding pro se and in forma pauperis with a civil rights action under 42 U.S.C. § 1983. Plaintiff alleges defendant was deliberately indifferent to a serious medical need in violation of his Eighth Amendment rights. Before the court is defendant's motion for summary judgment. Defendant alleges plaintiff has not shown a sufficiently serious deprivation or that she was deliberately indifferent to plaintiff's medical needs. For the reasons set forth below, this court recommends defendant's motion be granted.

**ALLEGATIONS IN THE COMPLAINT**

This case is proceeding on plaintiff's original complaint filed here on July 7, 2014. (ECF No. 1.) Therein, plaintiff alleges as follows. Plaintiff broke his ankle on June 12, 2011. (Id. at 4.) In 2012, while plaintiff was housed at California Correctional Facility (CCI), a non-party physician recommended "bone stimulation treatment and tibiotalar effusion to correct the malunion of my tibiotalar joint." (Id.) A Dr. Tate at CCI originally agreed with that

1

1  recommendation, but after plaintiff filed an inmate grievance complaining of the medical care he
2  was being provided, Tate retaliated against him by discontinuing all treatment.[1] (Id.)  When
3  plaintiff arrived at High Desert State Prison ("HDSP") in August 2012, he "was in debilitating
4  pain daily that significantly affected my daily activities as simple as walking.  Dr. Andrew
5  Pomazal requested that I receive physical therapy, but [defendant] Dr. Bonnie Lee denied the
6  request, which also included crutches or a cane, x-rays, treatment, or any pain relief and
7  rehabilitation." (Id.)  In his complaint, plaintiff makes no other specific allegations against
8  defendant Lee.

## MOTION FOR SUMMARY JUDGMENT

10  Defendant moves for summary judgment on the grounds that plaintiff has not shown his
11  medical needs were serious and has not shown defendant was deliberately indifferent to those
12  medical needs.  Defendant also contends she is entitled to qualified immunity.  Plaintiff argues in
13  opposition that he was in severe pain and the denial of his request for crutches and physical
14  therapy exacerbated that pain.

15  **I.     Legal Standards**

16      **A.  Summary Judgment Standards Under Rule 56**

17  Summary judgment is appropriate when the moving party "shows that there is no genuine
18  dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.
19  Civ. P. 56(a).  Under summary judgment practice, the moving party "initially bears the burden of
20  proving the absence of a genuine issue of material fact." In re Oracle Corp. Sec. Litigation, 627
21  F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  The
22  moving party may accomplish this by "citing to particular parts of materials in the record,
23  including depositions, documents, electronically stored information, affidavits or declarations,
24  stipulations (including those made for purposes of the motion only), admissions, interrogatory
25  answers, or other materials" or by showing that such materials "do not establish the absence or

---

[1] Plaintiff's allegation that Dr. Tate retaliated against him for filing an inmate grievance was the basis of a claim plaintiff presented in a prior lawsuit he filed in this court, O'Neal v. Solis, No. 1:12-cv-1299-RBB.  Plaintiff has not named Dr. Tate as a defendant in this action.

1    presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to
2    support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B).
3        When the non-moving party bears the burden of proof at trial, "the moving party need
4    only prove that there is an absence of evidence to support the nonmoving party's case." Oracle
5    Corp., 627 F.3d at 387 (citing Celotex, 477 U.S. at 325.). See also Fed. R. Civ. P. 56(c)(1)(B).
6    Indeed, summary judgment should be entered, after adequate time for discovery and upon motion,
7    against a party who fails to make a showing sufficient to establish the existence of an element
8    essential to that party's case, and on which that party will bear the burden of proof at trial. See
9    Celotex, 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the
10   nonmoving party's case necessarily renders all other facts immaterial." Id. In such a
11   circumstance, summary judgment should be granted, "so long as whatever is before the district
12   court demonstrates that the standard for entry of summary judgment . . . is satisfied." Id. at 323.
13       If the moving party meets its initial responsibility, the burden then shifts to the opposing
14   party to establish that a genuine issue as to any material fact actually does exist. See Matsushita
15   Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the
16   existence of this factual dispute, the opposing party typically may not rely upon the allegations or
17   denials of its pleadings but is required to tender evidence of specific facts in the form of
18   affidavits, and/or admissible discovery material, in support of its contention that the dispute
19   exists. See Fed. R. Civ. P. 56(c)(1); Matsushita, 475 U.S. at 586 n.11. The opposing party must
20   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the
21   suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986);
22   T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and
23   that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict
24   for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir.
25   1987).
26       In the endeavor to establish the existence of a factual dispute, the opposing party need not
27   establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual
28   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (citations omitted).

"In evaluating the evidence to determine whether there is a genuine issue of fact," the court draws "all reasonable inferences supported by the evidence in favor of the non-moving party." Walls v. Central Contra Costa Transit Auth., 653 F.3d 963, 966 (9th Cir. 2011). It is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### B. Other Applicable Legal Standards

#### 1. Civil Rights Act Pursuant to 42 U.S.C. § 1983

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. See Monell v. Dept. of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of §1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a

4

1  supervisorial position, the causal link between him and the claimed constitutional violation must
2  be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v.
3  Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978). Vague and conclusory allegations concerning the
4  involvement of official personnel in civil rights violations are not sufficient. See Ivey v. Board of
5  Regents, 673 F.2d 266, 268 (9th Cir. 1982).

### 2. Deliberate Indifference under the Eighth Amendment

7  The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S.
8  Const. amend. VIII. The unnecessary and wanton infliction of pain constitutes cruel and unusual
9  punishment prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 319 (1986);
10 Ingraham v. Wright, 430 U.S. 651, 670 (1977); Estelle v. Gamble, 429 U.S. 97, 105-06 (1976).
11 Neither accident nor negligence constitutes cruel and unusual punishment, as "[i]t is obduracy
12 and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited
13 by the Cruel and Unusual Punishments Clause." Whitley, 475 U.S. at 319.

14 What is needed to show unnecessary and wanton infliction of pain "varies according to
15 the nature of the alleged constitutional violation." Hudson v. McMillian, 503 U.S. 1, 5 (1992)
16 (citing Whitley, 475 U.S. at 320). In order to prevail on a claim of cruel and unusual punishment,
17 however, a prisoner must allege and prove that objectively he suffered a sufficiently serious
18 deprivation and that subjectively prison officials acted with deliberate indifference in allowing or
19 causing the deprivation to occur. Wilson v. Seiter, 501 U.S. 294, 298-99 (1991).

20 If a prisoner's Eighth Amendment claim arises in the context of medical care, the prisoner
21 must allege and prove "acts or omissions sufficiently harmful to evidence deliberate indifference
22 to serious medical needs." Estelle, 429 U.S. at 106. An Eighth Amendment medical claim has
23 two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's
24 response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on
25 other grounds by WMX Techs., Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997) (en banc).

26 A medical need is serious "if the failure to treat the prisoner's condition could result in
27 further significant injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974
28 F.2d at 1059 (quoting Estelle, 429 U.S. at 104). Indications of a serious medical need include

5

"the presence of a medical condition that significantly affects an individual's daily activities." Id. at 1059-60.  By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).

If a prisoner establishes the existence of a serious medical need, he must then show that prison officials responded to the serious medical need with deliberate indifference.  See Farmer, 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with medical treatment, or may be shown by the way in which prison officials provide medical care.  Hutchinson v. United States, 838 F.2d 390, 393-94 (9th Cir. 1988).

Before it can be said that a prisoner's civil rights have been abridged with regard to medical care, "the indifference to his medical needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06); see also Toguchi v. Soon Hwang Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) ("Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights."); McGuckin, 974 F.2d at 1059 (same).  Deliberate indifference is "a state of mind more blameworthy than negligence" and "requires 'more than ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835.

Delays in providing medical care may manifest deliberate indifference.  Estelle, 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising from delay in providing care, a plaintiff must show that the delay was harmful.  See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); Berry v. Bunnell, 39 F.3d 1056, 1057 (9th Cir. 1994); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989); Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).  In this regard, "[a] prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

Finally, mere differences of opinion between a prisoner and prison medical staff or between medical professionals as to the proper course of treatment for a medical condition do not give rise to a §1983 claim. See Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981).

### 3. Qualified Immunity

Government officials enjoy qualified immunity from civil damages unless their conduct violates clearly established statutory or constitutional rights. Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). When a court is presented with a qualified immunity defense, the central questions for the court are: (1) whether the facts alleged, taken in the light most favorable to the plaintiff, demonstrate that the defendant's conduct violated a statutory or constitutional right; and (2) whether the right at issue was "clearly established." Saucier v. Katz, 533 U.S. 194, 201 (2001), receded from, Pearson v. Callahan, 555 U.S. 223 (2009) (the two factors set out in Saucier need not be considered in sequence). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011). The existence of triable issues of fact as to whether prison officials were deliberately indifferent does not necessarily preclude qualified immunity. Estate of Ford v. Ramirez–Palmer, 301 F.3d 1043, 1053 (9th Cir. 2002).

## II. Material Facts

Defendant filed a Statement of Undisputed Material Facts. ("DSUF" (ECF No. 30-1).) Plaintiff filed a "Separate Statement of Disputed Facts" ("PSDF" (ECF No. 32 at 19-33)); an "Opposition to Summary Judgment Motion" (Pl.'s Oppo." (ECF No. 32 at 1-11)); a "Separate Statement of Undisputed Facts" (ECF No. 32 at 29-33); a "Declaration of Glenn O'Neal" ("Pl.'s Decl." (ECF No. 32 at 34-40)); and numerous exhibits (ECF No. 32 at 41-192). Plaintiff disputes, at least to some extent, most of the facts set out by defendant. Because plaintiff is in pro per, the court has reviewed all of his filings to determine just what facts plaintiff disputes.

////

7

Below, the court lists those material facts that are either not in dispute or for which the court finds no genuine dispute.

### A. Plaintiff's History re his Ankle Injury Prior to Move to HDSP

On June 12, 2011, while incarcerated in a county jail, plaintiff broke his ankle. He declined surgery at that time and his injury did not heal correctly. Plaintiff had a "non-union of distal tibia." A non-union occurs when the bones have not healed bone to bone. (DSUF ##1-3.)

In August 2011, while incarcerated at CCI, plaintiff was approved the following accommodations: crutches, a cam boot, a mobility vest, a ground floor cell, and a bottom bunk. (Pl.'s Ex. 10 (ECF No. 32 at 108).[2])

On September 30, 2011, plaintiff was seen by outside orthopedic specialist Dr. Taylor Mehul. (Ex. B to Decl. of Dr. Bruce Barnett at pp. B-0022, B-0023 ("Barnett Decl.") (ECF No. 30-3 at 40-41).) Dr. Taylor[3] recommended obtaining a CT scan of the left ankle and tibia and that "patient would likely need a tibiotalar effusion after review of the ankle x-rays." (Id. at 41.)

On January 18, 2012, while he was incarcerated at CCI, plaintiff's approval for crutches, a mobility vest, a ground floor cell, and a bottom bunk was renewed through June 30, 2012. (Pl.'s Ex. 10 (ECF No. 32 at 109).) In a medical record dated February 29, 2012 and titled "Off-Site Specialty Follow-up Appointment: Orthopedics F/U W/ Dr. Taylor," four items are listed (1) "Cam boot," (2) "Recommend Bone Stimulator Apply to L ankle," (3) "Non-op," and (4) "F/U in 6 months." (Ex. B to Barnett Decl. at p. B-0026 (ECF No. 30-3 at 44).)

On March 9, 2012, Dr. Tate at CCI examined plaintiff in response to a medical appeal and determined plaintiff's crutches should be discontinued. (Ex. B to Barnett Decl. at p. B-0027

---

[2] Both parties submitted portions of plaintiff's medical records. The records provided by defendant are in chronological order and therefore are easier to review. However, many of the copies provided by plaintiff are clearer and in some instances the court cites to them. Plaintiff's medical records contain some words that are not legible in any copy provided. The court does not consider any of that illegible information to be relevant to the court's findings and recommendations herein.

[3] The doctor's name at the top of his summary of plaintiff's September 30, 2011 visit is "Taylor Mehul, M.D." (ECF No. 30-3 at 40.) While it appears that "Taylor" is the doctor's first name, he is mostly referred to as Dr. Taylor, rather than Dr. Mehul, by both plaintiff and prison doctors. Accordingly, for the sake of consistency and clarity, the court also refers to him as Dr. Taylor.

(ECF No. 30-3 at 45).)  Dr. Tate stated that he had called Dr. Taylor "who agrees he is to be weight-bearing as tolerate[d]."  (Id.)  Dr. Tate also stated that he would request "bone stimulator per orthopedic suggestion to assist with potential further healing."

Dr. Tate then cancelled all of plaintiff's medical accommodations.  Dr. Tate wrote that "Patient has no permanent medical conditions that require housing accommodations or mobility-assistive devices including canes, crutches, walkers or wheelchairs."  (Id. at p. B-0028 (ECF No. 30-3 at 46).)  Several further Primary Care Physician ("PCP") Progress Notes, which appear to have also been signed by Dr. Tate, state that plaintiff is to "continue treatment program of weight-bearing without crutches."  (Id. at pp. B-0029 to B-0031 (ECF No. 30-3 at 47-49).)  In April 2012, Dr. Tate informed plaintiff that the prison had not approved purchase of a bone stimulator so plaintiff would not be receiving that treatment.  (Id. at p. B-0031 (ECF No. 30-3 at 49).)

In a medical classification chrono dated July 2012 and signed by Dr. Tate, Dr. Tate stated: "Patient should not carry loads heavier than 15 pounds, and should not perform work involving climbing more than 1 foot above level ground; no jumping.  Patient has a non-union of a distal tibial fracture which there is no reasonable treatment for."  (Id. at p. B-0032 (ECF No. 30-3 at 50).)

  **B.  Plaintiff's Initial Care at HDSP**

On August 15, 2012, plaintiff was transferred to HDSP.  (DSUF #8.)  A PCP Progress Note dated August 15 regarding plaintiff states "Male inmate-patient here for new arrival visit. He says he feels well, and has no symptoms.  He says he complies with his [illegible] RX without adverse effects."  (Id. at p. B-0033 (ECF No. 30-3 at 51).)

On September 26, 2012, plaintiff saw Dr. Pomazal at HDSP for ankle pain.  (Pl.'s Ex. 8 (ECF No. 32 at 89).)  Dr. Pomazal recommended diet and exercise and noted "pain review." According to plaintiff, Dr. Pomazal prescribed him medication at that time for his pain.  (Pl.'s Decl. at 4 (ECF No. 32 at 37).)

  **C.  Plaintiff's Health Care Services Request for Crutches**

On October 16, 2016, plaintiff submitted a health care services request form.  Therein he stated, "I am requesting crutches due to painful arthritis pain in my left ankle that was broken and

9

1  healed improperly. This condition make[s] it very difficult for me to walk." (Ex. B to Barnett
2  Decl. at p. B-0041 (ECF No. 30-3 at 59).)

3  On October 26, 2012, plaintiff was examined by Dr. Pomazal. In the PCP Progress Note,
4  Dr. Pomazal states that plaintiff "wants crutches." (Id. at p. B-0043 (ECF No. 30-3 at 61).)

5  Also on October 26, 2012, Dr. Pomazal made a health care services request for plaintiff.
6  (Pl.'s Ex. 9 (ECF No. 32 at 104).) The service requested was "Physical Therapy." Under the
7  heading "Medical Necessity," Dr. Pomazal wrote that plaintiff "wants crutches because of left
8  ankle pain and difficulty walking. HX of FX over 1 year ago and patient was observed walking
9  normally back to his house." Plaintiff cites this form for his statement that Dr. Pomazal
10 "promised O'Neal crutches and physical therapy." The form does not provide support for that
11 statement. In fact, the form gives no indication that Dr. Pomazal felt either physical therapy or
12 crutches were necessary. Further, because plaintiff seeks relief only against defendant Dr. Lee,
13 any conversations plaintiff had with Dr. Pomazal that are not reflected in his medical records
14 were not available to Dr. Lee and are therefore not relevant to her consideration of plaintiff's
15 request for crutches.

16 On October 29, 2012, defendant Lee signed a "Notification of Decision on Outside
17 Services Request." Lee was the Chief Physician and Surgeon at HDSP at that time. (Decl. of
18 Bonnie Lee ("Lee Decl.") (ECF No. 30-4) ¶ 2.) It stated that plaintiff's request for "physical
19 therapy" was denied because "crutches not medically indicated." (Ex. B to Barnett Decl. at p. B-
20 0049 (ECF No. 30-3 at 67).) Another form, also dated October 29, 2012, and titled "Utilization
21 Management Interdisciplinary Progress Note" stated that plaintiff's request for physical therapy
22 was reviewed by "Secondary physician advisory level" and denied. The reasons provided were
23 "crutches not indicated one year after a fracture." (Id. at p. B-0050 (ECF No. 30-3 at 68).)

24 **D. Plaintiff's Health Care Appeal #HDSP 12026678**

25 On October 16, 2012, plaintiff submitted health care appeal #HDSP 12026678. (Ex. B to
26 Barnett Decl. at p. B-0045 (ECF No. 30-3 at 63).) Plaintiff stated the subject of his appeal was
27 "Arthritis pain in broken ankle." He explained the issue as being "denied crutches that'd alleviate
28 arthritis pain I suffer caused by improperly healed broken ankle." Plaintiff requested "crutches to

10

support me when I am in arthritic pain after sitting and standing for long or short periods."

The First Level HC Appeal response to plaintiff's appeal #HDSP 12026678 is dated November 9, 2012. (Id. at p. B-0051 (ECF No. 30-3 at 69).)  The response was signed by defendant Lee. Lee explained that plaintiff had been interviewed by Dr. Pomazal on October 26, 2012 regarding his appeal. Dr. Pomazal "conducted an evaluation of your medical condition and noted that there is no medical indication for you to have crutches at this time."

It does not appear that defendant Dr. Lee was further involved in plaintiff's ankle care.

### III.     Analysis

Defendant Lee challenges both the seriousness of plaintiff's pain/injury and his assertion that she was deliberately indifferent to his medical needs. Below, the court finds plaintiff has failed to establish there are genuine issues of material fact regarding deliberate indifference. Therefore, the court need not reach the issue of the seriousness of plaintiff's pain/injury.

Dr. Lee was involved in two decisions challenged by plaintiff. First, she denied Dr. Pomazal's request for physical therapy. Second, Dr. Lee denied plaintiff's appeal at the first level.

### A.   Denial of Health Care Request for Physical Therapy

With respect to reviewing the request for physical therapy, Dr. Lee states that her practice was to "thoroughly review the patient's medical record to verify whether the treatment or mobility device is medically necessary." (Lee Decl. (ECF No. 30-4) ¶ 4.) A device is medically necessary "if it is determined to be reasonable and necessary to protect life, prevent significant illness or disability, or alleviate pain, that is supported by health outcome data as being effective medical care." (Id. ¶ 5.)

Dr. Lee states that she reviewed the request prepared by Dr. Pomazal for physical therapy for plaintiff. (Id. ¶ 9.) She noted that Pomazal's statement of the medical necessity for physical therapy was only plaintiff's request for crutches and that Pomazal noted he had seen plaintiff walk normally back to his housing unit. (Id.) Dr. Lee also spoke with Dr. Pomazal about the need for crutches. He told her "there was no medical indication to warrant crutches." (Id. ¶ 12.)

////

Dr. Lee felt crutches were not medically indicated a year after a fracture. In her professional opinion, "non-union fractures require weight bearing to heal and while crutches are used immediately after the injury, having the patient walk is the best way to promote healing. Using crutches a year after such a fracture can be harmful because it does not aid in the remodeling of the joint." (Id. ¶ 10.)

Plaintiff fails to show that any medical provider felt he required crutches at the time Dr. Lee considered his request in October 2012. While plaintiff complains that he was gaining weight as a result of his inability to exercise, and that contributed to his difficulty being weight-bearing, he fails to show that doctors at CCI or HDSP felt his weight gain indicated a need for walking support at that time.

Further, plaintiff's argument that he received walking support and physical therapy starting in late 2014 that assisted his recovery, does not establish that in October 2012 when Dr. Lee considered plaintiff's request for crutches, those therapies were medically indicated.[4] In sum, plaintiff fails to provide any evidence showing that the refusal to provide him crutches was medically unacceptable or that Dr. Lee's decision to refuse them was done "in conscious disregard of an excessive risk to [plaintiff's] health." Jackson, 90 F.3d at 332.

Finally, to the extent plaintiff argues he should have been provided a referral to physical therapy, while Dr. Pomazal did make that request, it is clear from plaintiff's original October 16, 2012 health care request, that he was only seeking crutches. Further, Dr. Pomazal listed

---

[4] Plaintiff states that after he was transferred to the California Substance Abuse Treatment Facility at CSP-Corcoran, apparently in the fall of 2014, he had physical therapy and, eventually in June 2016, he was prescribed "orthopedic shoes, ankle support brace, and customized insoles." (Pl.'s Oppo. at 7 (ECF No. 32 at 7).)
Plaintiff also moved to amend his opposition to include a July 2016 medical record. Plaintiff contends the record shows a doctor's opinion that, among other things, "severe fractures usually need a longer limit on weight-bearing activities." (ECF No. 35.) Plaintiff failed to include a copy of that medical record with his filing so the court is unable to consider it and the motion to amend will be denied. However, even if the court accepted plaintiff's description of the document, the court finds the doctor's 2016 opinion does not refute the opinion of several doctors who examined plaintiff in 2012 that weight-bearing was medically indicated. At most, the doctor's 2016 opinion demonstrates a difference of opinion among medical professionals, which is not enough to establish deliberate indifference. See Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004).

plaintiff's request for crutches as the only basis for the physical therapy request. Nowhere in his request, or in the health care appeal submitted the same day, did plaintiff make known that he felt he required any other device or care for his ankle.

### B.    Denial of Health Care Appeal

Generally, denying a prisoner's administrative appeal does not cause or contribute to the underlying violation. See George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007); Hernandez v. Cate, 918 F. Supp. 2d 987, 1018 (C.D. Cal. 2013).  The review assessment of a correctional medical official may constitute deliberate indifference only if the official was aware that the underlying challenged medical decision caused plaintiff "further significant injury or the unnecessary and wanton infliction of pain," and the official purposefully failed to pursue an appropriate medical remedy. Farmer v. Brennan, 511 U.S. 825, 842 (1994); see also Jett v. Penner, 439 F.3d 1091, 1098 (9th Cir. 2006) (prison officials, particularly those in administrative positions, may be "liable for deliberate indifference when they knowingly fail to respond to an inmate's requests for help").  This rule is especially true where the reviewer is medically trained. See, e.g., Thomas v. Nangalama, No. 2:10-cv-1295 JAM EFB P, 2013 WL 1281792, *7 (E.D. Cal. Mar. 26, 2013), findings and recos. adopted, 2013 WL 1800344 (E.D. Cal. Apr. 29, 2013); Pogue v. Igbinosa, No. 1:07-cv-1577 GMS, 2012 WL 603230 (E.D. Cal. Feb. 23, 2012) (medically-trained individuals who are made aware of serious medical needs through reviewing a prisoner's grievance may be liable for failure to treat those needs).

Dr. Lee had a right to rely upon the judgment of examining physicians and specialists that crutches were not appropriate for plaintiff. See Watkins v. Singh, No. 2:13-CV-0416 KJM CKD, 2015 WL 136015, at *3 (E.D. Cal. Jan. 9, 2015), aff'd sub nom. Watkins v. Bick, No. 15-15817, 2016 WL 4151400 (9th Cir. Aug. 5, 2016) ("It is generally not deliberate indifference to defer to a specialist."); Coats v. Kimura, No. 2:09-cv-1830 KJM KJN P, 2013 WL 76288, at *20 (E.D. Cal. Jan. 4, 2013) (appeal reviewer entitled to rely on treating doctors' expertise), findings and recos. adopted, 2013 WL 1325792 (Mar. 30, 2013); Butler v. Jong Yeoung Moon, No. 1:09–cv–2074 MJS P, 2011 WL 4591072, at *5 (E.D. Cal. Sept. 30, 2011).

////

Plaintiff's medical records showed that orthopedic specialist Dr. Taylor and Dr. Tate, plaintiff's treating physician at CCI, felt that plaintiff should no longer be using crutches starting in March 2012. In addition, as discussed above, Dr. Pomazal, who had examined plaintiff at HDSP, did not feel crutches were medically indicated in October 2012.

Plaintiff fails to provide any evidence showing that Dr. Lee's denial of his requests for crutches was "medically unacceptable under the circumstances" and was chosen in "conscious disregard of an excessive risk to [plaintiff's] health." Toguchi, 391 F.3d at 1058. Plaintiff also appears to argue that Dr. Lee should have provided some alternative pain relief. However, plaintiff never requested pain medication from her nor did he appeal any treating doctor's denial of pain medication. Moreover, it appears plaintiff was then taking pain medication. He states that at his September 26, 2012 appointment with Dr. Pomazal he was prescribed pain medication. Dr. Lee cannot be faulted for failing to prescribe pain medication for plaintiff when it was not requested. In sum, plaintiff has failed to establish a genuine issue of material fact regarding the issue of Dr. Lee's deliberate indifference to his medical needs.

Because the court finds summary judgment appropriate for defendant on the merits of plaintiff's claim, the court need not reach the issue of whether defendant is protected by qualified immunity.

Accordingly, and good cause appearing, IT IS HEREBY ORDERED that

1. Defendant's motion for an extension of time to file the reply brief (ECF No. 33) is granted; and
2. Plaintiff's motion to amend his opposition (ECF No. 35) is denied.

For the reasons set forth above, IT IS HEREBY RECOMMENDED that defendant's motion for summary judgment be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the

objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 6, 2017

/s/ Deborah Barnes
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:9
DLB1/prisoner-civil rights/onea1598.msj fr